**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

DARRELL SMITH, # R-16310,      )
                                      )
              **Plaintiff,**     )
                                        )
        vs.                  )    **Case No. 13-cv-837-GPM**
                                        )
ANGEL RECTOR, DR. SHAW,      )
and DEBBIE GRAHAM,          )
                                        )
            **Defendants.**    )

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

      Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, all health care providers at Pinckneyville, were deliberately indifferent to his serious medical condition of diabetes.

      More specifically, Plaintiff claims that Defendant Rector (nurse practitioner) has prescribed excessively high doses of insulin for him, and this is causing damage to his kidneys and pancreas (Doc. 1, pp. 1, 6). Defendant Dr. Shaw has collaborated with Defendant Rector in prescribing this dosage. Plaintiff has no choice but to take the prescribed dose, or go without this medication that he needs in order to manage his condition. He claims that because of the prison's meal schedule, he is not given food at the time he gets the insulin shot, and this combined with the higher dose has caused his health to decline (Doc. 1, p. 6).[1] He adds a general request that he should be provided with a more suitable and balanced diet, and claims that the

---

[1] Plaintiff attaches a number of grievances and responses to those grievances, two of which indicate that he is provided with a "snack bag" of food in the morning and at night, when his insulin is administered (Doc. 1-1, p. 4; Doc. 1-2, p. 6).

"overutilization of soybean products" has caused problems for him (Doc. 1, p. 7).

He further complains that the "accu-check" device used by the nurses to check his blood sugar stabs too deeply into the flesh of his fingers, striking the bone and causing pain and callouses (Doc. 1, p. 5).  These checks are done without sufficient disinfectant for the puncture site.  His complaints to Defendant Graham (a nurse) about these problems have fallen on deaf ears.

Defendants Shaw and Rector have refused to prescribe Plaintiff a physical therapy regimen, which would allow him to use the gym facility at the prison (Doc. 1, p. 6).  Plaintiff asserts that he needs regular exercise in order to control his diabetes.

Finally, Plaintiff sought treatment for a toenail fungus, and was charged a co-payment for that visit.  However, when he was examined by a health care worker, he was told that they do not treat this particular condition, thus no treatment was provided.  Plaintiff asserts that due to his diabetes, a minor problem like this could develop into a serious condition that could lead to dangerous complications, even amputation, if untreated (Doc. 1, p. 6).  He also takes issue with being charged a fee despite receiving no help.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

For the convenience of the Court, Plaintiff's claims are divided into the following counts:

**Count 1:**  Against Defendants Rector and Shaw for prescribing improper dosages of insulin;

**Count 2:**  Against Defendants Shaw and Rector for refusing to approve Plaintiff's use of

the gym facility;

**Count 3:**  Deliberate indifference claim for the denial of sufficient food to coincide with Plaintiff's insulin doses, as well as other deficiencies in the general prison diet;

**Count 4:**  Against Defendant Graham for deliberate indifference, for subjecting Plaintiff to pain and a risk of infection from the "accu-check" device;

**Count 5:**  Denial of treatment for Plaintiff's toenail fungus; and

**Count 6:**  Deprivation of property for the imposition of a health care co-payment when no treatment was rendered.

After fully considering the allegations in Plaintiff's complaint, the Court concludes that his pleading fails to state any constitutional claim upon which relief may be granted. As shall be explained below, the complaint and this action are subject to summary dismissal. However, Plaintiff shall be given leave to amend his complaint as to the allegations in **Count 5**, in order for the Court to determine whether that claim may merit further review.

## Count 1

Deliberate indifference by a medical provider to a prisoner's serious medical needs may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition."  *Estelle,* 429 U.S. at 106.  *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999).  Deliberate indifference

> involves a two-part test.  The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).  As to the subjective component, a complaint must indicate that the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate.  *Farmer,* 511 U.S. at 842.

Plaintiff's diabetes is, without a doubt, an objectively serious condition.  Having satisfied the objective component of an Eighth Amendment claim, the pertinent question here is whether Plaintiff's prison medical providers acted with deliberate indifference to a known risk of serious harm.

An inmate's mere dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm."  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference.  *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001).

In the instant case, the difference of opinion as to the proper dosage of insulin is between Defendants Rector and Shaw (a nurse and a doctor), and Plaintiff, who gives no indication that he has any professional medical training.  Even if the Defendants' prescribed course of treatment for Plaintiff's diabetes were to constitute malpractice, "medical malpractice does not become a

constitutional violation merely because the victim is a prisoner.  In evaluating the evidence, we must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment . . . this is a high standard." *King v. Kramer,* 680 F.3d 1013, 1019 (7th Cir. 2012) (internal citations and quotations omitted).

Plaintiff's allegations do not indicate that the Defendants' actions crossed this line to violate his constitutional rights.  To the contrary, they have provided regular insulin treatment as well as tests to monitor his blood sugar and other functions.  Nothing in the pleading indicates that their course of treatment was not based on medical judgment, or recklessly disregarded a known risk of harm.  While Plaintiff believes his prescribed dosage of insulin is too high, this allegation, if proven true, points to possible negligence or malpractice at worst.  It does not suggest deliberate indifference on the part of Defendants Rector or Shaw in their treatment of Plaintiff's diabetes.  The civil rights claim in Count 1 shall therefore be dismissed with prejudice.

## **Count 2**

Likewise, the denial of Plaintiff's request for permission to use the gym facility for exercise by Defendants Shaw and Rector does not rise to the level of a constitutional claim.

The Seventh Circuit has noted that a "[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir. 1988); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986).  Plaintiff alleges that in his case, sufficient exercise is especially important for him in order to help manage his diabetes.  However, nothing in Plaintiff's complaint indicates that he has been deprived of the opportunity for out-of-cell exercise as it is available to any prisoner.  Instead, he states that the

gym facility can be used by prisoners who receive special permission or doctor's orders authorizing gym access, and Defendants Shaw and Rector determined that Plaintiff did not have a medical need for such a pass.

As discussed above in Count 1, Plaintiff's disagreement with these medical Defendants' judgment regarding his need for a special gym pass does not support a claim for deliberate indifference to his medical needs. Furthermore, Plaintiff does not indicate that he has been denied yard time or any other regularly available out-of-cell exercise or recreation time. Many prisoners who desire additional exercise do so in their cells, by jogging in place or by doing aerobics, for example. *See e.g., Harris*, 839 F.2d at 1236. Such activities are freely available to Plaintiff.

In the instant case, Plaintiff was not deprived of any regular exercise. He was simply not given the extra privilege of gym access. This does not violate his constitutional rights; Count 2 shall be dismissed with prejudice.

**<u>Count 3</u>**

Plaintiff claims that ever since the prison changed the meal schedule to serve "brunch" at 11:00 a.m., he has had to go without food from the time he gets his 5:00 a.m. insulin dose until brunch (Doc. 1, p. 6). He claims this has had harmful effects on his kidneys and pancreas. However, his exhibits state that he is regularly served a "snack bag" at the time he gets his insulin (Doc. 1-1, p. 4; Doc. 1-2, p. 6). The allegations in the complaint do not clearly contradict the records that Plaintiff is given some food with his medication, however, he states that "what we are fed is not nearly enough to offset the powerful effect of the insulin" (Doc. 1, p. 6).

Taking these allegations and Plaintiff's exhibits as a whole, the complaint does not indicate that any Defendant was deliberately indifferent to Plaintiff's medical needs for food to

be provided with his medication.  Plaintiff may disagree with the adequacy of the amount of food included in the "snack bag" or with the meal schedule.  However, such a disagreement does not support a constitutional claim for deliberate indifference to his medical needs.   Plaintiff's complaint and documentation indicate that food and medicine are being provided to him in accordance with acceptable nutritional and medical standards.

By the same token, his vague allegations that the prison meals are nutritionally inadequate or depend too heavily on soy products do not support a constitutional claim.  A denial of food may satisfy the objective element of an Eighth Amendment claim, however, this is not a *per se* constitutional violation.  Rather, a district court "must assess the amount and duration of the deprivation."  *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999).  *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food").  Here, Plaintiff does not claim to have missed any meals.  Instead, he asserts that the prison diet is not sufficiently balanced with fruits, vegetables, and non-soy protein.  These general allegations do not show a sufficiently serious deprivation of a basic human need, as is required to establish the objective prong of a constitutional claim.  *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Nor does the complaint even suggest that any Defendant (or any other prison official) had the subjective intent to deprive Plaintiff of adequate nutrition or otherwise show deliberate indifference to a serious risk of harm to him from the prison diet.

For these reasons, Count 3 shall be dismissed with prejudice.

## <u>Count 4</u>

Plaintiff states that he has complained numerous times to Defendant Graham and other medical staff regarding the pain he has experienced from the "accu-check" device used to

monitor his blood sugar.   In addition, he claims that the nurses do not maintain a sterile environment or use disinfectant, placing him at risk of infection when his finger is pierced for the blood check.

Any medical procedure involving the piercing of skin to obtain a blood sample is likely to involve a certain degree of pain.  The device used at Pinckneyville may not be the best or most pain-free one on the market, but this does not amount to a constitutional violation.  As noted above in the discussion of Count 1, prisoners are not entitled to the best medical care available.  Prison medical care is constitutionally acceptable if the providers take "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

As to Plaintiff's concerns about the non-sterile environment, he does not indicate that he has ever contracted any infection or suffered any serious consequences as a result of the allegedly poor infection-control measures when he goes in for his finger-stick.   The circumstances he describes do not suggest that Defendant Graham or the other health care staff have been deliberately indifferent to a substantial risk of serious harm to Plaintiff.  Count 4 shall be dismissed with prejudice.

## Count 5

Plaintiff's claim that he was denied any treatment for his toenail fungus does raise the possibility of a constitutional violation.  This medical condition in and of itself may not be serious, but as Plaintiff points out, an untreated foot problem may lead to significant complications for a diabetic such as himself.  Further, the response to Plaintiff's grievance states that he was categorically denied treatment for the fungus because it is considered a "cosmetic" problem (Doc. 1-3, p. 6).  However, Plaintiff fails to connect any individual defendant with the alleged denial of treatment, thus, the complaint is inadequate to state a claim upon which relief

might be granted.

Count 5 shall be dismissed without prejudice.  Plaintiff shall be given one opportunity to submit an amended complaint **on this count only**, as described below.  If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g).  The amended complaint shall be subject to review pursuant to § 1915A.

## Count 6

Plaintiff's final claim is that he was deprived of his property (the $5.00 medical co-payment) when he was charged for a health care visit but received no treatment for the toenail fungus.  An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services.  Whether or not the assessment of a co-payment was proper is a question of state law, not cognizable in a § 1983 action.  *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution").  Further, to state a Fourteenth Amendment due process claim, a prisoner must establish a deprivation of liberty or property *without due process of law*.  If the state provides an adequate remedy, there is no civil rights claim.  *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).  The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims.  *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995).  Accordingly, Plaintiff's civil rights claim in Count 6 shall be dismissed with prejudice.

**Pending Motions**

Because Plaintiff shall be given an opportunity to submit an amended complaint, his motion for recruitment of counsel (Doc. 3) and motion for service of process at government expense (Doc. 4) shall be held in abeyance pending receipt and review of the amended complaint.

**Disposition**

**IT IS HEREBY ORDERED** that the complaint (Doc. 1) is **DISMISSED.  COUNTS 1, 2, 3, 4, and 6** of the complaint are **DISMISSED WITH PREJUDICE.   COUNT 5** is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support a deliberate indifference claim **IN COUNT 5 ONLY** (failure to treat Plaintiff's toenail fungus).   The amended complaint must name the individual Defendant(s) directly responsible for the alleged constitutional deprivations, and must be filed within 35 days of the entry of this order (on or before **Monday, November 4**, 2013).   An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.   *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).   The Court will not accept piecemeal amendments to the original complaint.   Thus, the First Amended Complaint must stand on its own, without reference to any other pleading.   Should the First Amended Complaint not conform to these requirements, it shall be stricken.   Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.   Failure to file an amended complaint shall result in the dismissal of this action with prejudice.   Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:**  September 30, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge